[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendants, Bonnalynn Stevens and Robert Blake, as partners, purchased a house at 210 Turnpike Road, Somers, Connecticut $61,500.00. They bought the house solely to sell it for a profit after fixing it up. Helen Flaws, a real estate salesperson working for a licensed broker, one of the plaintiffs, helped procure the purchase by Blake/Stevens. She and Bonnalynn Stevens were, in fact, acquaintances who had worked together previously.
210 Turnpike Road could best be described as a handyman's special at time of purchase. The evidence disclosed it was in a decrepit state of repair structurally and aesthetically. The extent of the disrepair was unknown to any of the parties when the house was purchased by the defendants on or about July 11, 1986. would lease the house for six months at $1.00 per month and pay $200.00 monthly thereafter, in consideration for which they would gut and redecorate the interior. Blake/Stevens agreed to pay for all materials and provide some of the labor, and to engage Helen Flaws as the selling agent and pay her a 6% commission. This agreement was reduced to writing.
Once the Flaws commenced cleaning out the house, removing wallpaper, shades, drapes and the like, they discovered that the roof needed complete replacement. Interior walls needed sheet rock. The electrical system required modernization. At least one carrying beam had rotted and needed replacement. One exterior wall had rotted out, requiring replacement. The central heating system required replacement. The hatchway needed replacement. Concrete repair work was necessary on the basement walls and floor. Sections of the interior flooring, which had rotted, needed replacement.
The roof was the first priority. The Flaws notified the defendants. Mr. Blake had broken his ankle at about this time and was unavailable to assist with the manual labor. Although he denied remembering having done so, the better evidence disclosed that he obtained two estimates from contractors to replace the roof. After obtaining the figures, Blake requested Mr. Flaws to do the work. It was at this time that Mr. Blake and/or Mr. Stevens verbally agreed to compensate the Flaws for their additional efforts to rehabilitate the house and get it into condition for resale.
The Flaws did most of the work, occasionally hiring supplemental labor. Those laborers were compensated by the defendants. The required structural work delayed completion of the project by three months. Within weeks of the sale of the house to people named HUMME, the Flaws became concerned CT Page 4620 that they were not going to receive the additional compensation promised by the defendants. Within a week of closing, the Flaws delivered a bill to defendants' attorney in the amount of $14,328.96 for labor and materials furnished which were not within the contemplation of the parties prior to the onset of the project. One day prior to closing, the plaintiffs filed a mechanics lien on the property.
The threshold issue raised is whether or not the plaintiffs claim is barred because the contract falls within the purview of 20-418 et seq. of the General Statutes, the Home Improvement Act. The court concludes that the arrangement between the parties is not governed by that law because the defendants bought the house as a commercial venture. Their intent was to fix it up and, immediately thereafter, sell it for a profit. In addition, the defendants resided within the home for several months while the house was being rehabilitated and, therefore, became "owners" as defined by 20-419 (6).
The defendants assert that they never promised the Flaws anything more than a roof over their heads at a very nominal rent and that Mrs. Flaws would be the listing agent for the sale of the house. Based upon all of the evidence presented, that probably was the agreement with respect to what the parties originally contemplated to be a cosmetic improvement of 210 Turnpike Road. When, however, the roof, wall and other major defects were uncovered, there was, effectively, an unforeseen change in circumstances requiring a new agreement.
The defendants did promise the Flaws additional compensation to be paid from the proceeds of the sale. They never defined a percentage of the profit or a specific amount and the Court must base its decision on the evidence presented by the plaintiffs relative to hours worked and materials utilized. The plaintiffs' efforts played a significant role in the fact that the house was sold on April 3, 1987 for $139,250.00.
Accordingly, the Court awards the plaintiffs the sum of $8,500.00 representing fair and just compensation for their labor, plus $118.69, the balance due them for materials purchased. The plaintiffs are also awarded costs.
SCHEINBLUM, J.